# UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

| | |
|---|---|
| FREDERICK HENDERSON, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 06-3050-CV-S-GAF-P |
| BILL HEDRICK, et. al., | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS HEDRICK, GAPASIN, HAZELWOOD, ALBURQUERQUE, AND MORTON'S AMENDED MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, MOTION TO DISMISS AND DISMISSING CASE WITH PREJUDICE**

Plaintiff, who currently is confined at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"), has filed this pro se case pursuant to 28 U.S.C. § 1331 and Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), seeking relief for claimed violations of his federally protected rights. Plaintiff's claims arise from his confinement at the United States Medical Center for Federal Prisoners ("USMCFP") in Springfield, Missouri. Plaintiff alleges that defendants Warden Bill Hedrick, Dr. Ernesto Gapasin, Dr. Robert Hazelwood, Physicians' Assistant Antonio Alburquerque, and Nurse T. Morton were deliberately indifferent to his medical needs after he had total hip replacement surgery. See Doc. No. 1. Currently pending before this Court are defendants Hedrick, Gapasin, Hazelwood, Alburquerque, and Morton's amended motion for summary judgment or, alternatively, motion to dismiss (Doc. No. 27), plaintiff's responses to defendants' amended motion for summary judgment or, alternatively, motion to dismiss (Doc. Nos. 33-35), and defendants' reply thereto

(Doc. No. 36).

## Summary Judgment

Pursuant to Fed. R. Civ. P. 56(c), a moving party is entitled to summary judgment on a claim only if he has made a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See generally Williams v. City of St. Louis, 783 F.2d 114, 115 (8th Cir. 1986); Buller v. Buechler, 706 F.2d 844, 846 (8th Cir. 1983). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving that party the benefit of all inferences that may be reasonably drawn from the evidence. Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588-589 (1986); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Tyler v. Harper, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). "The inquiry performed is . . . [whether] . . . there are genuine issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A party opposing a motion for summary judgment, however, "may not rest upon the mere allegations . . . of his pleadings, but . . . by affidavits . . . must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." Fed R. Civ. P. 56(e).

## Uncontroverted Facts

Plaintiff was confined at the USMCFP from February 5, 2003, until April 26, 2004. Doc. No. 33, p. 2. Plaintiff's home institution was the USP-Lewisburg. Id. at 7. He was transferred

to the USMCFP so he could participate in the "Axis II" program. Id. at 8. While plaintiff was confined at the USMCFP, he complained of lower back pain Id. Medical tests and consultations with specialists indicated that plaintiff might have an osteoid osteoma tumor on his right hip. Doc. No. 27, Ex. 1. Treatment options were discussed with plaintiff by independent contractor medical specialists, including defendant Dr. Schaeffer. Id. Plaintiff decided to have surgery to treat his condition, and, on January 30, 2004, Dr. Schaeffer performed a total right hip replacement on plaintiff. Doc. No. 33, pp. 2-3.

Plaintiff was discharged from St. John's and returned to the USMCFP on January 31, 2004. Id. at 3. Dr. Schaeffer's discharge orders included prescriptions for pain medications, a prescription for antibiotics to treat infection, and Coudamin to control blood clots. Doc. No. 27, Ex. 1; Doc. No. 33, Ex. 7. Dr. Schaeffer also prescribed activity such as weight bearing (standing), exercises to strengthen plaintiff's muscles, and the use of a walker. Doc. No. 27, Ex. 1, Doc. No. 33, p. 3.

On February 1, 2004, plaintiff was examined by USMCFP physician Dr. Mark Pearson, who was concerned that plaintiff might be developing pneumonia. Doc. No. 33, p. 4. Dr. Pearson spoke with plaintiff and advised him of the importance of deep breathing, standing, and walking in order to promote recovery and reduce complication. Doc. No. 33, p. 4. Plaintiff did not comply with either Dr. Schaeffer's or Dr. Pearson's recommendation, allegedly because he was in too much pain. Id. at 3-4. Defendant Dr. Hazelwood learned of plaintiff's non-compliance and instructed nurses to require plaintiff to walk to a nursing station in order to receive pain medication. Doc. No. 27, Ex. 1.

3

On March 3, 2004, Dr. Schaeffer assessed plaintiff's condition and concluded that plaintiff required strengthening of his hip muscles during physical therapy sessions. Doc. No. 27, p. 4. Plaintiff received physical therapy services and was discharged from physical therapy on April 22, 2004. Doc. No. 27, Ex. 3. During physical therapy, it was discovered that plaintiff has discrepancy in length between his right and left legs, which is a known complication of hip replacement surgery. Id. As a result of this discrepancy, a boot with a one-half inch wedge was prepared for plaintiff to improve his ability to walk. Id.

Dr. Gapasin signed a "transfer summary" document on March 18, 2004, and plaintiff was transferred back to the USP-Lewisburg on April 26, 2004. Doc. No. 27, p. 5. When he was transferred by the USMCFP, plaintiff was sent with a form entitled "medical record of federal prisoner in transit," which described plaintiff's medical needs during the course of his transfer. Id.

### Deliberate Indifference

"Deliberate indifference to the serious medical needs of a prisoner constitutes cruel and unusual punishment... and the Constitution prohibits state governments from inflicting such punishments." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996) (citing Estelle v. Gamble, 429 U.S. 97, 102-03 (1976)). "A prison official exhibits deliberate indifference when the official actually 'knows of and disregards' a prisoner's serious medical needs." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995) (citing Farmer v. Brennan, 511 U.S. 825 (1994)). "Deliberate indifference includes something more than negligence but less than actual intent to harm; it requires proof of a reckless disregard of the known risks." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir.

4

1998) (quoting Newman v. Holmes, 122 F.3d 650, 653 (8th Cir. 1997)). "Deliberate indifference may include intentionally denying or delaying access to medical care, or intentionally interfering with treatment or medication that has been prescribed." Vaughn v. Lacey, 49 F.3d 1344, 1346 (8th Cir. 1995).

### Defendant Hedrick

In his complaint, plaintiff alleges that defendant Hedrick was deliberately indifferent to plaintiff's medical needs because he did not properly supervise defendants Gapasin and Albuquerque when they composed and signed plaintiff's transfer summary. Doc. No. 1, p. 13. Allegedly, defendants Gapasin and Albuquerque falsified plaintiff's recovery status in order to transfer him from the USMCFP. Id. In their motion to for summary judgment, or alternatively, motion to dismiss, defendants assert that plaintiff is suing Hedrick based solely on his supervisory positions as the warden at the USMCFP. Doc. No. 27, pp. 8-9. Defendants argue that plaintiff has failed to state a claim against Hedrick because he had no personal involvement in the conduct alleged by plaintiff. Id.

Supervisors cannot be held liable for Section 1983 claims because of their overall responsibility for the operation of a prison (respondeat superior). See generally Pembaur v. City of Cincinnati, 475 U.S. 469 (1986); Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). "The supervisor must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." Boyd v. Knox, 47 F.3d 966, 968 (8th Cir. 1995). In Fruit v. Norris, the Eighth Circuit held that supervisors could be liable "when their corrective inaction amounts to 'deliberate indifference' to or 'tacit authorization' of the violative practices." 905 F.2d 1147,

5

1151 (8th Cir. 1990) (citation omitted).

Plaintiff has failed to show that Hedrick participated in the harm or was deliberately indifferent as required for recovery under supervisory liability. Boyd, 47 F.3d at 968. In his response to defendant's motion for summary judgment, plaintiff states that the administrative grievance he filed informed Hedrick of his serious medical needs. Doc. No. 34, pp. 5-5. Plaintiff asserts that Hedrick was aware that his subordinates were deliberately indifferent to plaintiff's medical needs and that it was Hedrick's duty to correct the situation. Doc. No. 34, pp. 5-6. Because plaintiff has asserted broad and conclusive claims against Hedrick based upon his overall position as a supervisor, defendants' motion for summary judgment (Doc. No. 27) will be granted on the issue of deliberate indifference with respect to Hedrick.

### **Defendants Gapasin, Hazelwood, Alburquerque, and Morton**

Plaintiff alleges that defendants Gapasin, Hazelwood, Alburquerque, and Morton were deliberately indifferent to his serious medical needs in providing him with post-operative care. Doc. No. 1, pp. 9-11; Doc. No. 34, pp. 6-7. Specifically, plaintiff alleges that they ignored his severe state of pain following his hip replacement surgery, that they did not give him needed pain medication, and that they exacerbated his pain by making him walk without assistance approximately thirty yards to retrieve his pain medication. Id.

The evidence submitted by defendants sufficiently shows that defendants Gapasin, Hazelwood, Alburquerque, and Morton were not deliberately indifferent to plaintiff's medical needs following his hip surgery. Dr. Schaeffer's discharge orders directed plaintiff to engage in activity in order to reduce complications from the surgery. Doc. No. 27, Ex. 1. Dr.

6

Hazelwood, in an effort to reduce complications from the surgery and to prevent plaintiff from developing pneumonia, ordered that plaintiff be required to walk to a nursing station in order to receive pain medication. Id. Defendants were not deliberately indifferent to plaintiff's medical needs by encouraging plaintiff to stand and walk following his surgery, but were promoting plaintiff's recovery. Plaintiff has submitted no proof that defendants denied him pain medication and the medical records submitted by plaintiff show that he regularly was provided with pain medication. See Doc. No. 1; Ex. M-R. In addition, after his surgery, plaintiff received physical therapy services and an orthotic shoe to help correct his walking difficulties. Doc. No. 27, Ex. 2, Attachments K and L. Therefore, defendants' motion for summary judgment (Doc. No. 27) will be granted on the issue of deliberate indifference with respect to defendants Gapasin, Hazelwood, Alburquerque, and Morton.

### Plaintiff's Transfer to the USP-Lewisburg

Plaintiff claims that defendants Hedrick, Gapasin, Hazelwood, and Alburquerque allowed him to be prematurely transferred back to the USP-Lewisburg without proper treatment. Doc. No. 1, pp. 11-14. Plaintiff alleges that the transfer summary, which was signed by defendants Gapasin and Alburquerque, contained erroneous and false information about plaintiff's medical condition. Id. at 11-13. Plaintiff alleges that defendants Gapasin and Hedrick retaliated against plaintiff for filing grievances regrading his medical needs by permitting him to be transferred before he had finished necessary treatment. Id. at 13-14.

"[A] prisoner enjoys no constitutional right to remain in a particular institution, and... generally prison officials may transfer a prisoner for whatever reason or for no reason at all."

Goff v. Burton, 7 F.3d 734, 737 (8th Cir. 1993) (citations and internal quotations omitted). "In raising a retaliatory transfer claim, the prisoner must face a substantial burden in attempting to prove that the actual motivating factor for his transfer was... retaliation." Id. Plaintiff has produced no evidence to demonstrate that defendants transferred him as an act of retaliation. Plaintiff's physical therapy records indicate that, on April 22, 2004, plaintiff was discharged from physical therapy because all physical therapy goals were met and plaintiff was able to walk independently with the use of a walker or cane. Doc. No. 27, Ex. 1, Attachment K. Plaintiff was not transferred from the USMCFP until after he had rehabilitated through physical therapy. Id. Before plaintiff was transferred, his medical condition was assessed by Dr. Gapasin, and Dr. Gapasin determined that plaintiff was suitable to be transferred to another prison. Doc. No. 27, Ex. 3. For the foregoing reasons, defendants' motion for summary judgment (Doc. No. 27) will be granted on the issue of plaintiff's transfer to the USP-Lewisburg.

**Qualified Immunity and Failure to Exhaust Administrative Remedies**

Because defendants' motion for summary judgment has been granted on the merits of the case, a decision as to its arguments regarding qualified immunity and failure to exhaust administrative remedies is unnecessary.

Accordingly, it is **ORDERED** that:

(1) defendants Gapasin, Hazelwood, Alburquerque, and Morton's motion for summary judgment (Doc. No. 27) is granted on the issue of deliberate indifference with respect to defendant Hedrick;

(2) defendants Gapasin, Hazelwood, Alburquerque, and Morton's motion for summary

judgment (Doc. No. 27) is granted on the issue of deliberate indifference with respect to defendants Gapasin, Hazelwood, Alburquerque, and Morton;

(3) defendants Gapasin, Hazelwood, Alburquerque, and Morton's motion for summary judgment (Doc. No. 27) is granted on the issue of plaintiff's transfer to the USP-Lewisburg; and

(4) this case is dismissed, with prejudice, for failure to state a claim.

  /s/ Gary A. Fenner  
GARY A. FENNER
UNITED STATES DISTRICT JUDGE

Kansas City, Missouri,

Dated:   12/18/06   .